UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>   X

VARSITY BRANDS, INC., VARSITY SPIRIT
FASHIONS AND SUPPLIES, INC. and
VARSITY SPIRIT CORPORATION,                          09-cv-01795 (PKC)

                    Plaintiffs,

-against-

J&M SPIRIT WEAR, INC. and
LOUIS D. HERNANDEZ,
                  Defendants.

_____X


## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


FELDMAN LAW GROUP, P.C.
Stephen E. Feldman
Kenneth S. Feldman
Steven M. Crosby
12 East 41st Street, 16th Floor
New York, NY 10017
(212) 532-8585
*Attorneys for Plaintiff*

TABLE OF CONTENTS

PLAINTIFFS' RESPONSE ..................................................................................1

NO SEPARABLE MATTER ...............................................................................1

PLAINTIFFS' ARGUMENT IS HIDDEN IN UNPRODUCED DOCUMENTS ............................2

COMPLETE CORRESPONDENCE/DEPOSITS DOCUMENTS NEEDED ................................5

PLAINTIFFS' CHARACTERIZATION NOT DISPOSITIVE ....................................................6

THE REALITY .....................................................................................................7

INDUSTRY NEEDS TO KNOW................................................................................9

# **TABLE OF AUTHORITIES**

## **CASES**

*Galiano v. Hurrahs,* 416 F. 3d 411, (5th Cir. 2005)................................................1

*Morris v. Buffalo Chips Bootery, Inc.* 160 F. Supp. 2d 718, 720-721 (SDNY 2001) ....1, 2

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .....1

*Gusler v. Fischer,* 580 F. Supp. 2d 309, 315-316, (SDNY 2008)……………..….........2, 8

*Collezione Europa U.S.A. Inc. v. Hillsdale House Ltd.,* 243 F. Supp 2nd 444, 448, n.3 (MD NC 2003)……………………………………………………………………...…..4

*Geoscan, Inc. Geotrace Tech. Inc.,* 226 F. 3d 387, 393, (5th Cir. 2000)…….…..…..…4

*Chambers v. Time Warner Inc.,* 282 F.3d 147, 154 (2nd Cir.2002) ………...…………..5

*Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) ………....5

*Friedl v. City of New York,* 210 F.3d 79, 83-84 (2d Cir.2000)………………….…....5, 6

*Morelli v. Cedel,* 141 F.3d 39, 45-46 (2d Cir.1998)………………………………..…..5

*Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999)………………………....…………..6

*Whimsicality, Inc. v. Rubie's Costume Co.,* supra, 721 F.2d 1566, 1574-5 (SDNY 1989)……………………………………………………………….…...6, 7, 9

*Eliya, Inc. v. Kohl's Dept. Stores,* 2006 WL 2645196, at *9, 2006 U.S. Dist. LEXIS 66637, at *28…………………………………………………………….........8

*Niemi v. Am. Axle Mfg. & Holding Inc.,* No. 05-74210, 2006 WL 2077590, at *3, 2006 U.S. Dist. LEXIS 50153, at *9 (E.D.Mich. July 23, 2006) ………………..…….8

*Nat'l Med. Care, Inc. v. Espiritu,* 284 F.Supp.2d 424, 435 (S.D.W.Va.2003)…..............8

*Hirsh v. Arthur Anderson & Co,* 72 F. 3d 1085, 1092 (2nd Cir. 1995).........................10

## STATUTORY LAW

Federal Rules of Civil Procedure 12 (b) …………………………………………......6

Federal Rules of Civil Procedure 56 (c)…………………………………………......6

**Plaintiffs' Response**

1. Plaintiffs' response does not dispute that a) they cannot protect clothing design, such as uniforms, (cheerleading or otherwise), through copyright; b) they have no case allowing copyright protection for designs of cheerleading uniforms, or art or fabric design applied to such uniforms, and the only case concerning uniforms the parties have found, denied protection (*Galiano v. Hurrahs*, 416 F. 3d 411, (5th Cir. 2005)), c) every one of Plaintiffs' copyright deposits contain pictures of their cheerleading uniforms on models, d) the numbers on their copyright deposits match their cheerleading uniform style numbers, e) they have not specifically identified any elements of their copyrights allegedly separable from their cheerleading uniforms, and do not claim their "artwork" or "fabric" is independently marketable at all.

**No Separable Matter**

2. In *Morris v. Buffalo Chips Bootery, Inc.* 160 F. Supp. 2d 718, 720-721 (SDNY 2001), Judge Rakoff wrote:

> Here, however, while plaintiff asserts that the "end product" of her "design process" is a "hand made unique leather artwork," Morris Aff., ¶¶ 8-9, she utterly fails to specify in any objectively identifiable fashion the copyrightable elements of her designs that are capable of existing independently of the articles of clothing themselves. **That in itself is fatal to plaintiff's copyright claim.** (emphasis supplied) *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").
>
> Moreover the Court's own comparison of the designs and clothing at issue in this case confirms that it is beyond reasonable dispute that each and every arguably aesthetic element of plaintiff's designs plays a utilitarian function in the clothing in which it is embodied. From the look of the stitchwork to the shape of the clasps to the placement of the seams, the artistic and the functional elements of plaintiff's designs are inextricably interwoven in the articles of clothing in which they appear.
>
> Accordingly, plaintiff's infringement claims must be dismissed.

3. In *Gusler v. Fischer*, 580 F. Supp. 2d 309, 315-316, (SDNY 2008) Judge Sweet stated:

> Here, beyond his bare allegations that the Product incorporates protectable "original design elements intended to appeal to consumers, not to enhance [the Product's] functionality," **Gusler has not identified any such elements which have been copied and which he believes are either physically or conceptually separable from the utilitarian aspects of the Product and, therefore, subject to copyright protection.** (emphasis supplied) Having failed to identify any protectable design elements copied by the Defendants, Gusler has offered no evidence in opposition to the Corporate Defendants' motion to indicate that there is a genuine issue of material fact to be tried regarding this claim. Therefore, summary judgment dismissing his copyright infringement claim is appropriate. *See, e.g., Morris v. Buffalo Chips Bootery, Inc.* (granting summary judgment to defendants on copyright infringement claim regarding "useful articles" where plaintiff had "utterly fail[ed] to specify in any objectively identifiable fashion the copyrightable elements of her designs that are capable of existing independently" of the articles themselves, as such failure was "in itself fatal to plaintiff's copyright claim") .

4. Plaintiffs' response identifies no elements or combinations of elements in their copyrights even allegedly "capable of existing independently" of the cheerleader uniform designs depicted. In fact, Plaintiffs' response does not attempt any precise analysis of separability of specifics of their alleged art works from their uniform designs at all.

**Plaintiffs' Argument is Hidden In Unproduced Documents**

5. Plaintiffs assert their copyright registrations and correspondence with the copyright office as evidence of separability of the unidentified design elements they claim copyright in. However, Plaintiffs have refused to produce all of their copyright registration deposits or correspondence with the copyright office[1]. This matter would be

---

1. It could take over a year for the Copyright Office to independently provide Defendants these deposits and correspondence herein. Since Plaintiffs have this matter, have submitted a selected portion of the deposits and correspondence, and argued it is relevant to this motion and this case, Defendants respectfully request the Court order all the deposits and correspondence produced and allow short supplemental briefing on it before deciding this motion.

relevant, because it helps to imagine what, if anything is separable art on Plaintiffs' cheerleading uniform designs, and it is impossible to know Plaintiffs' argument otherwise.

6. As partially produced by Plaintiffs, Plaintiffs' copyright deposits are all depictions (photographs and sketches) of models wearing their clothing, their cheerleader uniforms. See Exhibits 1-18 to Complaint. Sometimes text is included in the copyrighted material (two copyrights are entire catalogs with description), and some of the registrations state the copyright is in "2 dimensional artwork and text" **Exemplary Exhibit A.** Thus the scope of such copyrights may be these depictions or text, not the design elements on the clothing in these depictions.

7. Plaintiffs have represented they produced 11 of the 13 registration deposits for these registrations, and intentionally withheld two.

8. When Defendants asked for the remainder of Plaintiffs' deposits to their copyrights, Plaintiff refused, and stated they are simply depicted in another one of their cheerleader uniform catalogs (not the one submitted as a deposit) and sketches they produced. Plaintiffs point Defendants to an alternative to the two missing deposits, and have not produced the actual deposits, the actual "artwork" they registered as their copyright. Thus Plaintiffs themselves believe seeing their cheerleading uniforms in Plaintiffs' catalog alone, provides Defendants with notice of the scope of their copyright.

9. In their opposition, Plaintiffs submitted selected correspondence with the Copyright Office regarding their copyright applications, and argued the rejection, reconsideration, and then granting of such applications is "significant". See Plaintiffs' Opposition brief p. 10. Yet Plaintiffs have refused to produce such correspondence in its entirety (including

3

all deposits). Defendants and the Court remain ignorant of the basis of the rejection, reconsideration, and then grant of these copyrights.

10. Of the thirteen (13) copyrights Plaintiffs have submitted in this case, eight of them explicitly state there is correspondence between the Copyright Office and the applicant concerning them. **Exemplary Exhibit B**

11. Such correspondence typically includes letters from the Copyright Office explaining reasons it is rejecting or limiting an application, letters from Plaintiffs making arguments for reconsideration of the rejection or limiting the requested protection, letters from the Copyright Office limiting or granting the copyright protection, letters seeking further information, etc.

12. As Plaintiffs have argued, the correspondence with the Copyright Office concerning an application for copyright (including the copyright deposit) is relevant to knowing the scope of the copyright allegedly at issue. Ex. *Collezione Europa U.S.A. Inc. v. Hillsdale House Ltd.*, 243 F. Supp $2^{nd}$444, 448 n.3 (MD NC 2003) (Correspondence helps establish only carved leaves separable from uncopyrightable furniture design) See *Geoscan, Inc. Geotrace Tech. Inc.*, 226 F. 3d 387, 393, (5th Cir. 2000) (Correspondence between Copyright Office and Plaintiff renders registration ineffective)

13. All three letters Plaintiffs selected to produce are <u>from</u> the Copyright Office and all state that on reading Plaintiffs' own arguments in letters to the Copyright Office, the Copyright Office has decided to reconsider a rejection. Two of the letters state:

> each work contains a sufficient, <u>though minimal</u>, amount of original and creative separable artistic or graphic authorship in the treatment and arrangement of the pre-existing elements coupled with their coloring on the surface of each work that may be regarded as copyrightable, and therefore support a copyright registration.   (emphasis in original)
> See p. 1 of Letters from Copyright Office attached to Plaintiffs' brief.

14. The scope of protection afforded such a copyright labeled "minimal" may be for the photography or drawings, the text, the artistic rendering of poses of the depicted cheerleaders, school logos, or as described, color. Such a copyright would be "thin".

15. It is certain there are many more letters concerning the copyrights alleged at issue, than the three letters Plaintiffs have selected to produce herein. For example, since the three selected letters reversed rejection of Plaintiffs' copyright applications, there had to be letters from the Copyright Office rejecting the application and Plaintiffs' letters seeking reconsideration of the rejections. Plaintiffs produced none of the initial rejection letters from the Copyright Office that have to exist, nor any of Plaintiffs' reconsideration letters. Defendants and the Court can not know what is in such letters or what other correspondence Plaintiff withholds.

16. Each of these copyrights with produced correspondence has a deposit which contains cheerleading uniforms with a school logo/lettering on it. The Court can take Judicial notice that the colors and logos of cheerleading uniforms are dictated by the team colors and logos of the sports team being cheered for, and are not owned by Plaintiffs.

**Complete Correspondence/Deposits Needed**

17. The Second Circuit stated in *Chambers v. Time Warner Inc.*, 282 F.3d 147, 154 (2nd Cir.2002):

> Once the District Court was presented with matters outside the pleadings, Rule 12(b) afforded two options. The court could have excluded the extrinsic documents. Because it elected not to do so, however, the court was obligated to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56. See *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (per curium); *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir.2000); *Morelli v. Cedel*, 141 F.3d 39, 45-46 (2d Cir.1998). Therefore, the court erred by receiving and reviewing the Codes, an option barred by Rule 12(b). This conversion requirement is "strictly enforced" whenever a district court considers

> extra-pleading material in ruling on a motion to dismiss. *Friedl*, 210 F.3d at 83 (quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir.1999)).

18. Thus in submitting their selected correspondence with the copyright office, and their alternative copyright deposits in opposition to Defendants' motion, Plaintiffs are asking the Court to consider outside evidence.

19. Defendants agree with such consideration, but do not believe extensive discovery is needed to resolve this motion, simply production of three items: 1) Plaintiffs' complete correspondence with the Copyright Office, 2) Plaintiffs' complete copyright deposits, 3) all of Plaintiffs' evidence of the independent marketability or separability of their "artwork" or "fabric design". This gives Defendants a fair opportunity, and the Court an informed picture to decide the motion.

**Plaintiffs' Characterization Not Dispositive**

20. Plaintiffs' characterization of the copyrights as "artwork" or "fabric" is not dispositive of the separability issue.

21. The Court explained in *Whimsicality, Inc. v. Rubie's Costume Co.*, 721 F.2d 1566 1574-5 (SDNY 1989) (reversed on other grounds and then substantively reinstated on remand) :

> There is no question that this Court's conclusion would be otherwise were this Court simply to accept Whimsicality's characterization of the articles. The Court acknowledges that a work of art that happens to be worn, or a wearable toy, might be copyrightable. The reality, however, after a careful review of the record and an examination of the articles themselves, belies Whimsicality's arguments, for there is no doubt in this Court that the subject articles are costumes. Whimsicality's studied position that its sculptures just happen to be adaptable as costumes, and just happen to be popular during the Halloween season, but that the articles are equally adaptable as wall hangings or decorations, must be dismissed. Not a single advertisement ever advises the consumer that his costume had such a different destiny. In sum, every indication in the record is that Whimsicality designs, manufactures and markets the

6

sculptures not as works of art that can be worn, but as items principally for masquerade wear.

22. Thus the court looked at the real articles themselves and the actual marketing and made an independent analysis of the alleged separability of the copyrighted work allegedly on the utilitarian article.

**The Reality**

23. As the Whimsicality Court explained, "[w]hile the pictorial, graphic and sculptural aspects of useful articles may be copyrightable if they are separable from the article, physically or conceptually ... clothes are particularly unlikely to meet that test-the very decorative elements that stand out being intrinsic to the decorative function of the clothing." Id

24. Plaintiffs have submitted no argument or evidence that their alleged artwork or fabric design is ever marketed, marketable, or viewed as anything but cheerleading uniforms.

25. Every single deposit and every catalog Plaintiffs submitted depicts Plaintiffs' cheerleading uniforms (sometimes with text). Whether portrayed in design sketches, catalogs, or photographs, the subject matter is always Plaintiffs' cheerleading uniforms being worn, along with depictions of the wearer in various poses, and sometimes text. See Plaintiffs' deposits attached to complaint. Exhibits 1-18.

26. While these depictions themselves may contain "artwork", the uniforms within them do not.

27. Plaintiffs' own catalog lists the design components of their cheerleader uniforms as clothing "design," "length," "neckline," and "sleeve" styles to be selected to make a uniform. **Exhibit C.** Thus the sketches and photographs in Plaintiffs' copyrights are akin to technical drawings, presenting combinations of cheerleading uniform design

7

components. The Uniforms in the deposits are various combinations of such garment design components.

28. Defendants submit these components are all used for the utilitarian purposes of cheerleading uniforms, to allow easy movement, visibly represent the team being cheered for, and sustain stress and action without damaging the garment. Many of the clothing design components of Plaintiffs' uniforms simply follow and reinforce the seams holding the garment together.

29. In *Gusler v. Fischer* supra, 580 F. Supp. 2d 309, 314-315, (SDNY 2008) Judge Sweet stated:

> Defendants do not contest that Gusler has a valid copyright in the drawings that he alleges were copied. **Defendants assert, however, and the Court agrees, that Gusler holds a copyright in a technical drawing of a useful article, which does not preclude Defendants' manufacturing and marketing of the article itself.** (emphasis supplied) See *Eliya, Inc.,* 2006 WL 2645196, at *9, 2006 U.S. Dist. LEXIS 66637, at *28 ("[O]wnership of a copyright in a pictorial representation of a useful article does not vest the owner of the picture with a derivative copyright in the useful article itself."); see also *Niemi v. Am. Axle Mfg. & Holding Inc.,* No. 05-74210, 2006 WL 2077590, at *3, 2006 U.S. Dist. LEXIS 50153, at *9 (E.D.Mich. July 23, 2006) (holding that "the manufacture of a machine from a copyrighted technical drawing is clearly not copyright infringement"); *Nat'l Med. Care, Inc. v. Espiritu,* 284 F.Supp.2d 424, 435 (S.D.W.Va.2003) ("Copyright law protects an author's original expression, but does not give the author the exclusive right to use the ideas expressed in the author's work. An author may only obtain protection for the ideas expressed by obtaining a patent.")

30. "In other words, art is protectable under the conceptual separability test only when it can be said that the art came into existence for reasons entirely unrelated to the utilitarian purpose of the useful object (of which the art happens to be an element)". *Whimsicality,* supra, at 1573.

31. Defendants respectfully submit none of the combinations of clothing design components in Plaintiffs' cheerleading uniforms was made for "reasons unrelated" to the

utilitarian purpose of cheerleading uniforms. If Plaintiffs' copyrights are valid, they can only be for what Plaintiffs submitted (the depictions), not for the clothing designs depicted, or the stripes, geometric shapes, or other components of garment design.

**Industry Needs To Know**

32. Although Plaintiffs admits they cannot protect clothing design, they are attempting to do so by fiat. If clothing designers could protect their designs by photographing or sketching models wearing them, the entire fashion industry would be doing it, and the Copyright Office would not need to consider the legislative revision it is.[2] See *Whimsicality* supra at 1572 ("Equally noncopyrightable are the elaborate designs of the high fashion industry, no matter how admired or aesthetically pleasing they may be").

33. Defendants did not attempt to register their cheerleading uniform designs because there is no protection for clothing design, but if this Court rules clothing design can be protected by fiat (photograph, sketch), Defendants (and the rest of the fashion industry) will follow suit.

34. If such is the case, Defendants would counterclaim for infringement, as Plaintiffs have copied Defendants' "artwork" on their original clothing designs.

35. Defendants respectfully suggests it is not plausible that Plaintiff is the first clothing company whose designs are protectable as independent art based upon photographs and sketches of people wearing them. "General, conclusory allegations need not be credited … when they are belied by more specific allegations of the complaint" *Hirsh v. Arthur Anderson & Co*, 72 F. 3d 1085, 1092 (2nd Cir. 1995).

---

[2] See *Protection for Fashion Designs*, Statement of the United States Copyright Office, July 27, 2006 U.S. House of Representatives 109th Congress, *http://www.copyright.gov/docs/regstat072706.html*, first hit Google search "copyright in fashion designs".

9

36. Defendants' first request for documents and things seeks all such correspondence with the copyright office (including deposits), and is due for response by Plaintiff next week.

37. Defendants request they be permitted to supplement this brief after Plaintiffs produce their complete copyright office correspondence (including all deposits) and any other separability evidence they have. After this, the Court should have a complete picture of the parties' positions on the issue, and can decide this motion with some finality to provide guidance for discovery, or an end to this copyright case and an issue framed for appeal.

38. In this manner, the Court's decision on this issue can be an informed one.

39. Defendants request oral argument on this motion and that if the Court denies this motion, the issue be certified for appeal given its importance to the clothing industry.

Dated: July 22, 2009

                FELDMAN LAW GROUP, P.C.

By: _____
Stephen E. Feldman
Steven M. Crosby
Kenneth S. Feldman
12 East 41st Street, 16th Floor
New York, New York 10017
(212) 532-8585
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
VARSITY BRANDS, INC., VARSITY SPIRIT
FASHIONS AND SUPPLIES, INC. and VARSITY
SPIRIT CORPORATION,

        Plaintiffs,                                09 Civ. 1795 (PKC)

                                                ECF Case

      -against-

J&M SPIRIT WEAR, INC. and LOUIS D.
HERNANDEZ,

        Defendants.
---------------------------------------------------------------- x

## CERTIFICATE OF SERVICE

    I hereby certify that on this 22[th] day of July, 2009, a true and correct copy of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS was served on counsel for Plaintiffs by ECF:

        Arlana Cohen
        COWAN LIEBOWITZ & LATMAN, P.C.
        1133 Avenue of the Americas
        New York, NY 10036-6799

                                                    _____
                                                        Steven M. Crosby